## PHYFE *vs.* PHYFE.

*In the matter of the estate of* JOHN PHYFE, *deceased.*

A bequest to a legatee " and his legal representatives" contains only words of limitation, and not of succession or substitution, and accordingly vests the absolute interest in the donee, which, on his decease before coming into possession, passes to his executor or administrator.

The term " legal representatives" is sometimes construed as signifying " next of kin," when it is evident that substitution was contemplated ; or where the first taker had only a life estate or qualified interest.

In the interpretation of a will it is proper to adhere to the general intent, so far as possible.

A bequest to the testator's sons " and the legal representatives of such of them as shall be living at the time when such distribution ought to be made, share and share alike—the legal representatives or children to receive such part only, as the parent would have been entitled to receive if living at the time when such distribution should have been made,"—*Held*, to intend a substitution in favor of children only, and not the next of kin—the words " children" and " parent" being correlative terms, and " children" being used convertibly for " legal representatives." And one of the sons having died without issue, *held*, that his share had lapsed.

SANDFORDS & PORTER, *for Executor.*

The question submitted in this case, depends upon the construction to be put upon the words " legal representatives" as used in the will of the testator.

This is to be determined by the legal sense of the words and by the subject to which they are applied, as well as by the connection in which they are used.

1. The *subject* is personal property. The conversion is "out and out" for the purposes of distribution; the beneficiaries take money, and not land. The case of *Meakings* vs. *Cromwell*, 1 *Selden*, 136, is decisive on this point; see also cases cited in the judgment, from pages 141 to 145.

2. Where the words used have acquired a legal signification, the law presumes that the testator used them in that sense. In very many cases this is a conclusive legal presumption. The rule in Shelly's case is one of the illustrations. The words "legal representatives" literally mean executors or administrators, the persons who legally represent their deceased testator or intestate. The words are to be taken in their *strict legal sense*, unless there is a *plain demonstration* in the will that the testator has used them in a different sense. (9 *Clark & Fin*, 668, '69–698, 699 — *Winter* vs. *Perratt*.)

3. There are cases in which the technical sense has been departed from, and a more loose and popular signification of words in a will has been preferred, where if the strict legal sense had been adopted the *devise would fail;* but the existence of such a risk is never to be taken as proof that a testator uses known legal phrases in an unusual and untechnical sense, unless the risk *is imminent*, and the event one which he must be presumed to have been aware of, to have had before his eyes, and meant to avoid, and yet to have taken no precautions to avoid, except the use of the words in question.

If it be only a possibility which we can speculate upon and imagine, while he may very possibly never have thought of it, no inference can arise which it would be safe to rely upon in construing his words. It constantly happens that cases occur never contemplated, and nothing can be more common, than to see the legal construction of a devise defeat what must have been the intention of the testator. (*Per Lord Brougham*, 9 *Cl. & Fin*, 699.)

These remarks fully answer the suggestion, "that the intention of *this testator* undoubtedly was to give the proceeds of his estate to his own children and their issue, and not to pay debts due to strangers."

It is undoubted, as a matter of sound probability, that no thought on this subject was entertained by the testator; and it is certain, that he has used no language in the will to express it.

4. As the Court cannot depart from the known and fixed rule of law, upon the ground suggested in this case, the inquiry is, who is the "legal representative" entitled to the share of William F. Phyfe under the will?

"Legal," means the representative authorized or permitted by law, to represent the deceased son,—he who "according to law" represents the late William F. Phyfe. As to the personal property, it is his executor or administrator. As to real estate, it is the heir at law.

"Representative" is one who occupies another's place and succeeds to his rights and liabilities. (2 *Stephens' Com.*, 243. *Burrill's Law Dic.*, Title "*Representative.*")

The words legal representatives do not import "*kindred*," nor "*representatives in blood.*" (1 *Russ & Myl.*, 587, *Saberton* vs. *Skeels, in* 1830.)

Sir John Leach says: "All words are to be understood in their ordinary sense, unless controlled by the context of the will. The ordinary sense of "personal representatives" is executors and administrators. I find nothing in this will to control this ordinary sense." (*See also* 1 *Coll. Chan. R.*, 108, 117, *Taylor* vs. *Beverly*, 6 *Mad.*, 159, *Price* vs. *Strange.*)

In the case of *Bridge* vs. *Abbott.* 3 *Bro. Ch. Cas.* 224, 226, cited on the other side, the Master of the Rolls says: "It is true, that by legal representatives, in the Court of Chancery, we generally mean the persons in whom the estate legally vests."

In all the cases cited, the court found from the language of the will, such "demonstration plain" as authorized a departure from the strict meaning of the terms. (*See* 1 *Coll-*

*yer Ch. C.,* 7, 10, *Booth* vs. *Vicars; and* 2 *Beav.,* 67, 70, *Cotton* vs. *Cotton*); where the Master of the Rolls says: " When it is said that the expression ' legal representatives' means next of kin, it is *not that such is the force of the words themselves,* but because the words are held to indicate the persons who, *upon the construction of the will* are beneficially entitled, in the place of the person to whom the gift was first made." (*See also,* 1 *Myl. & K.,* 465, 68, 69, *Baines* vs. *Ottey.*)

If executors or administrators be the " legal representatives" as to personal property, the persons answering that description take in their representative character, and the fund is to be applied and distributed in the same manner as any other assets that come to them in that character. (1 *Phillips Ch. R.,* 1, 6, *Daniel* vs. *Dudley.* 1 *Beav.* 46, 52, *Grafftey* vs. *Humpage,* 2 *Hare,* 521, 524, *Holloway* vs. *Clarkson.*)

The Vice Chancellor says: " The conclusion to be drawn from the more modern, not unsupported by some of the earlier cases, is this : that under a gift simply to ' representatives' or to ' legal representatives,' the hand to receive the money is that of the person constituted representative by the Ecclesiastical Court."

5. The reference to our statute of distributions does not advance the discussion, nor aid in the decision of the question. It provides expressly for a succession, in kindred. (2 *R. S.,* 96, *sec.* 75, *sub.* 1, 2.)

6. The words ' legal representatives,' or ' children of my sons,' are explained by the fact that the testator was dealing with personal property, and that he was not aware of the law of equitable conversion. The language is in the alternative, and the use of the word " children" does not exclude the " representative." This construction, that " children" was used as explanatory of the previous word representative and as its synonyme, would produce a lapse in this particular case, as William F. Phyfe left no children, and it is certain that the testator has provided against that contingency.

The word "children" is not a limitation of the sense, nor the equivalent of the word "representative," as used in the will.

It is submitted that the Surrogate put a correct construction upon the will, and that no error has been made so apparent as to authorize the Surrogate to open his decree.

B. W. BONNEY, *for Legatees.*

John Phyfe, by his will, dated 12th December, 1827, devised, bequeathed, and directed as follows:

First. Directed that his executors pay his debts and funeral expenses.

Second. Gave to his wife, during her life, the rents, issues, and profits of all his estate, real and personal, and the use of his furniture and household goods, for the support of herself and children : *on condition* that she did not again marry.

Third. Directed, that after the death or re-marriage of his wife (whichever should first happen), his executors should convert all his estate into money, *and after paying all his debts and funeral expenses,* "*divide the residue of his said estate into eight equal parts.*"

Fourth. In case his wife *should* marry—directed, that his executors invest one-third part of the proceeds of his estate for the use and benefit of his wife, and pay her the income thereof during her life, in lieu of dower, &c. Then—

Fifth. "One-eighth part of the residue of the proceeds of my said estate I give and bequeath to my son, Isaac M. Phyfe, and to his legal representatives."

Sixth, seventh, eighth, ninth and tenth, are similar bequests to five other sons.

Eleventh. Directed the two remaining eighth parts of his estate to be invested by his executors for the use of his son, Daniel Watson Phyfe, and the interest thereof to be paid to him, for his support and maintenance, during his life, and in

case of his death, leaving issue, that said two-eighths be transferred to such issue in equal proportions.

Twelfth. Directed, that the share of his estate directed to be invested for the use of his wife during her life, be equally divided among all his sons (except Daniel Watson, for whose use and support provision had already been made, as in the will mentioned), " and the legal representatives of such of them as shall be living at the time when such distribution ought to be made, share and share alike—the legal representatives or children of my said sons to be entitled to receive such part only as the parent would have been entitled to receive, if living at the time when such distribution ought to be made."

Appointed executors, &c.

The testator died within a few hours after executing said will, which was prepared in great haste, and the original draft executed.

William Phyfe, one of the testator's sons, in said will named, died in 1842, intestate, without issue, and unmarried; being at the time of his death considerably indebted, and insolvent.

The widow of the testator never married again. She died in the year 1845.

It is contended, that upon the decease of testator's widow, and the then conversion of the whole estate into money, and division of the proceeds (after payment of debts, &c.) into eight parts, as by the will directed—the surviving brothers of said William Phyfe, (one of the sons of the testator in the will named) deceased, became, as his next of kin and legal representatives, entitled to said eighth part, so given to him and to his legal representatives.

The intention of the testator (if consistent with rules of law) must govern in the construction of a will; and the intention of *this testator* undoubtedly was to give the proceeds of his estate to his own children and their issue, and not to pay debts due to strangers, in case either of his sons should die,

without issue, before the decease of testator's widow. And this intention we think is expressed in the will.

The construction of the will turns upon the meaning given to the words "*legal representatives*," as used by the testator. Did he by these words mean *the executors or administrators, or* the *next of kin* of his sons?

These words " legal representatives" are often construed to mean next of kin. They are used in this sense in our statute of distributions. (2 *Rev. Stat.*, 96, *sec.* 75, *4th ed.*, *p.* 281, *sec.* 82.)

In the following cases the words " legal representatives" were held to mean the next of kin, *not* the executors or administrators of the legatee. (*Bridge* vs. *Abbott*, 3 *Brown's Ch. C.*, 224. *Jennings* vs. *Gallimore*, 3 *Vesey*, 146. *Long* vs. *Blackall*, 3 *Vesey*, 486. *Robinson* vs. *Smith*, 6 *Simons' R.*, 47. *Walter* vs. *Makin*, 6 *Simons' R.*, 148. *Cotton* vs. *Cotton*, 2 *Beavan R.*, 67. *Booth* vs. *Vicars*, 1 *Collyer's Chy. C.*, 6. *See also*, 2 *Jarman on Wills*, *p.* 39 ; *and Watson* vs. *Bonney*, 2 *Sandf. S. C. R.*, 405.)

That the testator used the words " legal representatives" *as meaning next of kin*, is entirely clear from the *twelfth* section or item of the will above quoted : and there is nothing in the whole will inconsistent with this construction.


THE SURROGATE.—The testator gave his wife the use of all his estate for life, and on her decease or marriage directed the property to be sold, and after the payment of his debts, the residue of the proceeds to be divided into eight equal parts. He then provided, that in case his wife should re-marry, one-third of the proceeds of the estate should be invested for her benefit for life. By the next clause he gave " one eighth part of the residue of the proceeds" of his estate to his son, " Isaac M. Phyfe, and to his legal representatives;" and by the next five clauses, " one other eighth part" of his estate to each of several sons " and his legal representatives" and " the two remaining eighth parts" he requi-

red to be invested for the use of his son, D. W. Phyfe. The next article ran in this way: " Twelfthly. From and after the decease of my said wife, it is my will and desire, and I do hereby direct that the share or proportion of my said estate so directed to be invested for the use and benefit of my said wife, during her natural life, be equally divided between all my said sons, except my said son Daniel Watson Phyfe, for whose use and support provision has already been made, in manner hereinbefore mentioned, and the legal representatives of such of them as shall be living at the time when such distribution ought to be made, share and share alike ; the legal representatives or children of my said sons to be entitled to receive such part only as the parent would have been entitled to receive if living at the time when such distribution ought to be made."

The testator died in 1827, leaving surviving him his widow and seven children. William, one of his sons, died in 1842, and the widow died in 1845, without having married.

The first question that arises relates to the construction of the bequest to " William and his legal representatives." It must be observed here that the conjunctive term " and" forbids the idea that the gift was intended for W., " or" in case of his death, " his legal representatives." A legacy in the alternative to " A, or his issue," to " A, or his legal representatives," may denote that succession or substitution was intended. But a legacy to " A, and his legal representatives," contains words of limitation, and not of succession or substitution. The cases in which "legal representatives" have been construed as intending " next of kin," are cases where the decease of the legatee was contemplated, and his representatives were to be substituted. (2 *Jarman on Wills*, 42, 1 *Roper*, 128, *Williams on Ex'rs.*, 970), or where the first taker had only a life estate or qualified interest. The word " or" generally speaking implies substitution, so as to prevent a lapse ; but here the term " and" is used, and cannot be capriciously changed. I am therefore of opinion that the legacy given to William by the eighth clause of the testa-

tor's will, vested in William absolutely on the testator's decease, was not divested by William's death, but passed to his executor or administrator.

The will is very obscurely expressed, but the intention to limit the interest of D. W. Phyfe to two-eighths of two-thirds of the estate is most clearly indicated in the twelfth clause. He is directly excluded from any share of one-third, directed to be invested, in case of the marriage of the widow; and that one-third is given among the other sons. It is true that this clause is constructed on the hypothesis of the marriage of the widow, but almost the entire will seems to be constructed on the same hypothesis; and if it is to be construed literally and strictly, might end in results far different from the testator's design. I must therefore adhere to the general intent, so far as it can be gathered. The one-third which is the subject of the twelfth clause, is directed to be divided among the testator's sons (except D. W. Phyfe), " and the legal representatives of such of them as shall be living at the time when such distribution ought to be made, share and share alike ; the legal representatives or children to receive such part only as the parent would have been entitled to receive if living at the time when such distribution should have been made." The words children and parent being correlative terms, and children being used convertibly for legal representatives—the substitution here intended was that of the children, and not the next of kin of the deceased son. (*Barstow* vs. *Goodwin, 2 Bradford R.*, 417.) But on the other hand, the whole clause shows an intention to give to the sons who should be living and the legal representatives of such as should *not* be living—meaning by legal representatives, children. There being no children of William, his share has either lapsed, or devolved on the other legatees. It has not devolved on the other legatees, because they take as tenants in common, and consequently it must be distributed among the testator's next of kin living at his decease, and their legal representatives, as in case of intestacy.